IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01228- LTB-KLM

LARRY W. MCCORMACK

Plaintiff,

v.

PRORODEO HALL OF FAME AND MUSEUM OF THE AMERICAN COWBOY, INC.,
PROFESSIONAL RODEO COWBOYS ASSOCIATION, INC.,
TROY L. ELLERMAN,
TANNA KIMBLE,
CARA TURNER,
RYER HITCHCOCK,
PROFILE EMPLOYEE ASSISTANT PROGRAM,
STEVE TUCKER, PhD., AND
DOES 1 THROUGH V, INCLUSIVELY,

Defendants.

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(6)**

---

Defendants ProRodeo Hall of Fame and Museum of the American Cowboy, Inc. ("ProRodeo HOF"), Professional Rodeo Cowboy's Association, Inc. ("PRCA"), Tanna Kimble ("Kimble"), and Ryer Hitchcock ("Hitchcock") respectfully submit this brief in support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

DEN 96288852v6 9/4/2007

## I. INTRODUCTION

Plaintiff was employed by the PRCA and the ProRodeo HOF in the positions of Chief Operating Officer and Executive Director for approximately 15 months. During his employment, the individuals with whom he worked repeatedly expressed concern about his anger management, decision making and use of alcohol. As a result of continued substandard performance and financial mismanagement, Plaintiff's employment was terminated in August, 2006. Plaintiff now asserts eight separate legal theories to recover damages against his former employers and co-workers for their alleged actions during the final months of his employment and leading up to his termination. As Plaintiff has failed to allege sufficient facts to support the claims he has asserted, each is properly dismissed as a matter of law.

The sole basis for federal jurisdiction alleged by Plaintiff is a violation of the Electronic Communications Privacy Act. The act regulates wiretapping and electronic surveillance. Here, the gravamen of Plaintiff's Complaint is that defendants purportedly used a handheld digital recorder to tape his office conversations. It is well-established that merely recording conversations via an unaugmented recorder does not constitute a violation of the federal wiretapping statute. As such, Plaintiff's allegation is insufficient to state a claim upon which relief may be granted. Moreover, because the sole federal question claim is insufficiently pled, Plaintiff's remaining Colorado state law claims may properly be dismissed.

Notwithstanding divestiture of jurisdiction, however, several of the state law claims are themselves deficient. Plaintiff's breach of contract claim, for instance, does not satisfy the requisites necessary to overcome the presumption in Colorado that every employment relationship is "at-will." His claim for civil conspiracy also fails both because he has not alleged an actionable underlying civil wrong and because the allegations supporting this claim are vague, conclusory, and do not satisfy the specificity requirement necessary to sustain such a claim. Plaintiff's interference claim is equally specious as Plaintiff has failed to allege facts to demonstrate that ProRodeo HOF director and trustee Ryer Hitchcock unlawfully interfered with

2

his employment at ProRodeo HOF. Finally, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in the employment context is not cognizable in Colorado.

For these reasons, and as set forth more fully below, Plaintiff's allegations of violations of the Electronic Communications Privacy Act, breach of contract, civil conspiracy, intentional interference with economic relations, and breach of the implied covenant of good faith and fair dealing fail to state a claim upon which relief may be granted, and are properly dismissed.

## II.     OPERATIVE FACTS[1]

Plaintiff Larry McCormack is a former employee of PRCA and ProRodeo HOF. (Compl. ¶ 1.) He was hired in 2005 as the Chief Operating Officer of PRCA and the Executive Director of ProRodeo HOF. (*Id.* ¶¶ 19, 29.) In the months leading up to his termination, Plaintiff's colleagues and employers became increasingly concerned both with his ability to be fiscally responsible, (*id.* ¶¶ 60-62, 115, 18), and with his "anger management, accountability, decision-making, and alcohol related issues," (*id.* ¶ 102). This concern manifested itself in two ways.

First, as alleged by Plaintiff, his co-workers taped some of his office calls using a hand-held digital recorder in order to support "allegations that [he] was creating a hostile work environment through language he had used during telephone calls." (Compl. ¶¶ 68, 79-96.) According to the Complaint, his co-workers recorded at least three of his office conversations. (*Id.* at 86.) Attempting to correct his behavior, Plaintiff's supervisor subsequently confronted him about things the supervisor heard him say in the recordings. (*Id.* at 83.)

Second, having identified certain work problems, Plaintiff's employers attempted to afford Plaintiff opportunities to improve his performance. His supervisor, Troy Ellerman, first sent him a written letter dated July 5, 2006, setting forth a performance improvement plan as recommended by Employee Assistance Program counselor Dr. Steve Tucker. (*Id.* ¶ 102). The plan outlined several goals and expectations such as attendance in a leadership course, and

---

[1] As a matter of record, Defendants clearly dispute many of the facts detailed in Plaintiff's Complaint. Those alleged facts are nevertheless recited here since a Plaintiff's factual allegations must be taken as true for purposes of a motion to dismiss.

3

appointments with a counselor, as well as regular meetings with his supervisor to assess his progress. (*Id.*) A month later, on August 14, a special committee of the ProRodeo HOF board provided McCormack with a letter questioning his abilities, (*id.* ¶ 118), and outlining their expectations for corrective action to improve his performance, (*id.* ¶ 116). The ProRodeo HOF board ultimately voted to discharge Plaintiff later that month. Nearly a year later, Plaintiff commenced this litigation.

### III.    STANDARD FOR A MOTION TO DISMISS

The Supreme Court recently reviewed and restated the sufficiency standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure: "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1968-69 (May 21, 2007). In restating this standard, the Court expressly rejected the oft-quoted language in *Conley v. Gibson* that a complaint may not be dismissed under Rule 12(b)(6) unless a plaintiff "can prove *no set of facts* in support of his claim." *See id.* "On such a focused and literal reading of Conley's 'no set of facts,'" observed the Court, "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleading left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 1968. Instead, the standard now requires courts to more closely scrutinize factual allegations underlying the claims in a plaintiff's complaint to ensure the complaint alleges facts sufficiently setting forth the essential elements of the cause of action.

In judging the sufficiency of a Complaint, the Court must still accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff. *Riddle v. Mondragon*, 83 F.3d 1197, 1201-02 (10th Cir. 1996). However, the requirement that a complaint give the defendant fair notice of what the claim is and the grounds upon which it rests "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S.Ct. at 1965. Accordingly, in reviewing the Complaint here, the Court need not and should not accept "conclusory allegations or legal conclusions masquerading

as factual conclusions." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 538 U.S. 999 (2003).

Even giving Plaintiff every benefit of the doubt, his Complaint fails to state claims for violations of the Federal Wiretapping Statute, breach of contract, civil conspiracy, intentional interference with economic relations, and breach of the implied covenant of good faith and fair dealing under this more exacting standard. Defendants address the critical flaws with respect to each of these causes of action below.

### IV. ARGUMENT

#### A. Plaintiff Fails to State a Claim for Violation of the Federal Wiretapping Statute (Count I).

In his first cause of action, Plaintiff purports to allege a claim for violation of the Electronic Communications Privacy Act, codified at 18 U.S.C. § 2511 (2004). (Compl. ¶¶ 133-136.) The act, commonly referred to as the Federal Wiretapping Statute, prohibits the interception of an oral, wire, or electronic communications through the use of "any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Additionally, the Federal Wiretapping Statute prohibits disclosure of information obtained through such interception. *Id.* § 2511(1)(b). Section 2520 further authorizes a private civil action for violations of the title. Here, Plaintiff claims that Defendants, through the use of a handheld "digital recorder," intercepted his "oral or wire communications." (Compl. ¶¶ 86.) Whether the communications were oral or wire is an important distinction because wire communications are generally protected from interception whether or not the speaker has a reasonable expectation of privacy in the communications. *See United States v. Harpel*, 493 F.2d 346, 349 (10th Cir. 1974). Oral communications, on the other hand, depend on the speaker having a reasonable expectation of privacy. *See id.* Nevertheless, even assuming Plaintiff's allegations are true and even assuming the more rigorous "wire"

standard, the Federal Wiretapping Statute neither regulates nor prohibits recording conversations using an unaugmented standard digital recorder.

The Federal Wiretapping Statute was intended to regulate "wiretapping and electronic surveillance" in the face of increasing threats to privacy given the "tremendous scientific and technological developments" in surveillance techniques. S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153-54. It should come as no surprise, then, that the use of a standard tape recorder under these circumstances does not constitute interception in violation of the statute. *United States v. Carroll* is instructive. *See* 337 F. Supp. 1260 (D.C. Dist. 1971). In that case, the defendant overhead and recorded a telephone conversation in an adjacent hotel suite by using a cassette-type recorder with a standard microphone. *See id.* at 1262. As an initial matter, and pursuant to an earlier motion to dismiss, the court held that intercepting one end of a "telephone conversation without the actual interception of a communication passing through the wires was not intended to be included within the definition of the term 'wire communication,'" but instead was simply another form of oral communication. *United States v. Carroll*, 332 F. Supp. 1299, 1301 (D. C. Dist. 1971). Moreover, even as to oral communications, the court held that where the communications are recorded through use of an inexpensive cassette-type recorder that was no more sensitive than the human ear, the speaker had no objective reasonable expectation of privacy. *See id. See also United States v. McLeod*, 493 F.2d 1186, 1188 (7th Cir. 1974) (statute inapplicable where listener was "located in a public place and overheard the conversation ... without the use of any amplification device"); *Siripongs v. Calderon*, 35 F.3d 1308 (9th Cir. 1994) (statute inapplicable to recording one side of a telephone conversation made in the middle of a police station).

Here, even accepting the face of Plaintiff's allegations in the Complaint as true, Plaintiff asserts only that a "digital recorder" was utilized to intercept his "oral **or** wire" communications. The allegation, standing alone, is insufficient to state a claim under the Federal Wiretapping Statute. As a matter of law, as in *Carroll*, the conversations, whether or not through the telephone, are treated as a form of oral communication. Also as a matter of law, the facts as pled

6

make clear that Plaintiff had no reasonable expectation of privacy in conversations capable of being recorded via an unaugmented recorder. Accordingly, this claim should be dismissed for failure to state a claim upon which relief can be granted.

### B. Dismissal of Count I Divests This Court of Subject Matter Jurisdiction.

Plaintiff's claims for (i) breach of contract, (ii) invasion of privacy, (iii) civil conspiracy, (iv) wrongful discharge, (v) intentional interference with economic relations, (vi) breach of the implied covenant of good faith and fair dealing, and (vii) assault are all based on Colorado state common law and are before the court pursuant to its supplemental jurisdiction. The only federal question claim is the Federal Wiretapping Statute. Since Plaintiff has not sufficiently stated a claim for relief under the statute, if that single cause of action is dismissed, 28 U.S.C. § 1367(c)(3) expressly authorizes, and the Tenth Circuit explicitly recommends, the court decline to exercise supplemental jurisdiction over the remaining state-law claims. *See Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (where federal claims dismissed, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary").

Among the factors to consider in refusing to hear a plaintiff's pendant state claims after dismissing the sole federal claim are: "whether the federal claims were dismissed before trial, whether the state claims predominate, whether the state claims are closely tied to questions of federal policy, and whether the jury is likely to be confused by the treatment of divergent legal theories of relief." *Curtis Ambulance of Florida, Inc. v. Board of County Com'rs of Shawnee County*, 811 F.2d 1371, 1386 (10th Cir. 1987) (upholding district court's decision to decline to exercise pendant jurisdiction where it dismissed all federal claims). Consideration of these factors weighs heavily in favor of declining to exercise jurisdiction over Plaintiff's state-law claims. As an initial matter, the Federal Wiretapping Statute claim could not have been dismissed any earlier and will have been dismissed far in advance of trial. In such situations, the Tenth Circuit counsels that a district court "may, and usually should, decline to exercise

jurisdiction over any remaining state claims" and allow the plaintiff instead to pursue them in state court. *Smith v. City of Enid By and Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also Ball*, 54 F.3d at 669; *Harris v. Rittenhouse*, 2007 WL 915421, at *5 (D. Colo. Mar. 23, 2007). Dismissal is particularly appropriate here given the numerous contract and tort state-claims predominate the lawsuit and most are entirely separate and factually distinct from the wiretapping claim. Moreover, each claim is entrenched in state law and policy and none is closely tied to questions of federal policy. As such, considerations of judicial economy, fairness, convenience and comity warrant deferring these matters to state court and disposing of Plaintiff's state-law claims.

### C. Several of Plaintiff's Remaining State-Law Counts Fail to State A Claim Upon Which Relief May Be Granted.

Notwithstanding divestiture of subject matter jurisdiction, Plaintiff's allegations concerning breach of contract, civil conspiracy, intentional interference with economic relations, and breach of the implied covenant of good faith and fair dealing are in and of themselves insufficient to state a claim upon which relief may be granted.

#### 1. Plaintiff Fails to State a Claim for Breach of Contract (Count II).

Plaintiff's second cause of action alleges breach of an employment contract or, in the alternative, promissory estoppel. (Compl. ¶¶ 137-140.) The law in Colorado is clear that, absent an explicit understanding to the contrary, every employment relationship is presumed to be "at-will," meaning that either the employer or the employee may terminate the relationship at any time, without notice and without cause. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992). In an effort to allege facts sufficient to support a claim for breach of contract, Plaintiff asserts that a written letter dated July 5, 2006 from Troy Ellerman to him setting forth a performance improvement plan as recommended by Employee Assistance Program counselor Dr. Steve Tucker (hereinafter "July 5 Performance Plan") constitutes a written contract with the PRCA which the PRCA breached by "terminating [his] employment prior to January, 2007." (Compl. ¶¶ 137-140.) Essentially, Plaintiff claims that once the PRCA put him on a short-term

8

performance improvement plan with a deadline of January, 2007 to meet its goals, this action amounted to a promise that he would not be fired before that date. Even accepting Plaintiff's characterization and recitation of the contents of the July 5 letter as true, the facts as alleged are insufficient to state a claim for breach of contract.

To state a claim for breach of contract, Plaintiff must allege: 1) the existence of a contract; 2) his full performance or some justification for nonperformance; 3) PRCA's failure to perform; and, 4) resulting damages. *See Western Dist. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). As shown below, as a matter of law none of the alleged statements in the July 5 Performance Plan is sufficient to state a claim for breach of a written contract. Accordingly, dismissal is proper.

        a.    <u>Plaintiff Fails To Allege An Enforceable Contract.</u>

For an enforceable contract to exist, there must be an offer, acceptance and consideration. *See* CJ.I.Civ-4th 30:3 (2002). There must be mutual assent to an exchange between competent parties, legal consideration, and sufficient certainty with respect to the subject matter and essential terms of the agreement. *See Denver Truck Exchange v. Perryman*, 307 P.2d 805, 810 (1957). The Complaint fails to meet these requisites.

As an initial matter, Plaintiff did not and cannot show any "offer" to contract for a specified employment term. Under Colorado law, an employer's "vague assurances" that do not "contain detailed lay-off guidelines or other guarantees of employment" and are "too indefinite to constitute a contractual offer which would enable a court to determine whether a contract has been performed." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465 (10th Cir. 1994). For a written statement by an employer to create an enforceable contract, the statement must meet two requirements. It must disclose a promissory intent or be one that the employee could reasonably conclude constituted a commitment by the employer. If it is merely a description of the employer's present policies or, as here, a corrective action plan, it is neither a promise nor a statement that can reasonably be relied upon by the employee. In addition, the employer's statement must be sufficiently definite to allow a court to understand the nature of the obligation

9

taken. *See Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. Ct. App. 1998); a*ccord Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 620 (Colo. Ct. App. 1997).

Although he did not attach the July 6 Performance Plan, Plaintiff did purport to set forth the provisions of the "contract" verbatim in paragraph 102 of the Complaint. Nothing alleged by Plaintiff concerning the July 6 Performance Plan satisfies either of these standards for two reasons. First, nothing alleged with regard to the letter demonstrates a promissory intent; rather, the letter is, by its own description Dr. Tucker's proposal for Plaintiff's performance improvement and for resolving workplace problems. The document, as described by Plaintiff himself, outlines several goals and expectations for Plaintiff to accomplish, such as attendance in a leadership course, and appointments with a counselor to "address anger management, accountability, decision-making, and alcohol related issues," as well as regular meetings with Ellerman to assess Plaintiff's progress. (Compl. ¶ 102.)

Second, as alleged by Plaintiff, nothing within his description or selective recitation is "sufficiently definite to allow a court to understand the nature of the obligation taken." *Hoyt*, 981 P.2d at 194. For a statement to create an employer/employee contract, it must consist of more than "general aspirational statements," *Marsh v. Delta Air Lines, Inc.*, 952 F. Supp. 1458, 1466 (D. Colo. 1997), a company's "general commitment to [take] affirmative action" to ensure fairness and equality, *Vasey*, 29 F.3d at 1465, or "general indefinite policy statements," *Orback v. Hewlett-Packard Co.*, 97 F.3d 429, 432 (10th Cir. 1996). Rather, each statement must contain "detailed lay-off guidelines or other guarantees of employment," *Vasey*, 29 F.3d at 1465, "specific procedures for termination of employment," *Lawson v. Science Applications Int'l Corp.*, 894 F. Supp. 378, 381 (D. Colo. 1995), or "detailed or mandatory provisions or guidelines," *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1496 (D. Colo. 1997). In his description of the July 6 Performance Plan, Plaintiff has failed to allege facts from which it can be maintained that the letter contains the requisite detail or specificity to create an express or implied contract between PRCA and Plaintiff. By his own description, it merely outlines the

10

implementation of steps and goals to help Plaintiff attain the desired level of performance with the organization. It certainly does not provide any "detailed guidelines" for employment or "specific procedures" for termination of employment.

Finally, nowhere within his recitation of the July 5 Performance Plan did Plaintiff allege facts indicating his job was secure until January 2007. *See, e.g., Diyorio v. AT&T*, 2007 WL 1853629 at *2 (9th Cir. Jun. 25, 2007) (short-term performance plan did not create an implied-in-fact contract). In fact, the written document described in the Complaint contradicts the existence of guaranteed employment. Rather, the plan as described by Plaintiff explicitly contemplates continuation of corrective activities only "assuming things are going well." (Compl. ¶ 102(2).) Nowhere does Plaintiff aver that he complied with these directives or that "things [were] going well." Even if Plaintiff had included these necessary allegations, the supposed contract language set out in the Complaint nowhere stated or implied that Plaintiff would not or could not be terminated even if he completed the plan's prerequisites. In short, Plaintiff failed to allege facts sufficient to maintain that his at-will status was altered in any way by the July 5 Performance Plan described in the Complaint. As such, as a matter of law, Plaintiff has failed to allege that he and the PRCA entered into a mutual understanding guaranteeing that he would not be fired until January 2007.

    b. <u>Plaintiff Fails To Allege His Full Performance And PRCA's Non-Performance.</u>

Even if Plaintiff properly alleged the existence of an employment contract, he must further provide factual allegations concerning his performance and PRCA's nonperformance. *See, e.g., Nelson v. Centennial Casualty Co.*, 273 P.2d 121, 123 (Colo. 1954); *Diodosio*, 841 P.2d at 1058. He has done neither. According to the terms of the July 5 Performance Plan, Plaintiff was required to meet weekly with Ellerman, enroll in a leadership course, and attend follow-up appointments with Dr. Tucker to address anger management, accountability, decision-making, and alcohol related issues. (Compl. ¶ 102.) Aside from alleging a single meeting on July 18, 2006, the Complaint is utterly devoid of any facts indicating Plaintiff performed his end

of this so-called agreement. Neither has he properly alleged that PRCA failed to perform. At best, by the terms of the purported contract as alleged in the Complaint, Plaintiff's continued employment was premised on the vague assurance of "things . . . going well." (*Id.*) There is no indication in the Complaint or otherwise that things were, in fact, going well and, accordingly, there are no facts alleged sufficient to maintain that the PRCA failed to perform when it terminated McCormack on August 30, 2006.

Accordingly, Plaintiff's breach of contract claim is barred as a matter of law, and should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Plaintiff Fails to State a Claim for Civil Conspiracy (Count IV).

In his fourth cause of action, Plaintiff alleges a civil conspiracy to secretly bug and record his private conversations.[2] (Compl. ¶¶ 144-47.) Under Colorado law, an actionable conspiracy consists of: (1) two or more persons; (2) an unlawful objective or a lawful objective to be accomplished through unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *See, e.g., Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 51 (10th Cir. 1963); *Nelson v. Elway,* 908 P.2d 102, 106 (Colo. 1995); *Lockwood Grader Corp. v. Bockhaus,* 270 P.2d 193, 196 (Colo. 1954). Civil conspiracy is not independently actionable and requires the existence of an underlying tort. Even then, mere agreement to do something that happens to aid in the commission of a tort, without more, does not constitute civil conspiracy. *See Powell Prods., Inc. v. Marks,* 948 F. Supp. 1469, 1480 (D. Colo. 1996). Rather, to support a claim for civil conspiracy, plaintiff must state his or her claims against each defendant with particularity. *See Sieverding v. Colorado Bar Ass'n,* 2003 WL 22400218, *17 (D. Colo. 2003). A claim for civil conspiracy will be dismissed if based on allegations that are conclusory and vague. *See id.* at *18. The Complaint does not meet these requirements for two reasons.

---

[2] Although Plaintiff fails to identify the specific defendants against whom this claim is asserted, we assume from a reading of the Complaint that the count concerns Troy Ellerman, Tanna Kimble and Cara Turner. (Compl. ¶¶ 90-92.)

First, far from satisfying these rigorous pleading requirements, Plaintiff has done nothing more than generally aver that a conspiracy existed to secretly bug and record his private conversations causing him damages. The count itself contains only conclusory allegations, (Compl. ¶¶ 144-47), and any related details in the Complaint, such as the roles of the individual Defendants and the purported concerted actions taken by those Defendants, are all premised upon information and belief, (Compl. ¶¶ 90-92). There are simply no facts alleged that show any agreement to conspire. Among other things, Plaintiff fails to allege when such agreement was made, where the agreement was made, how the agreement was made, and the specific terms of the agreement. In short, the Complaint's conspiracy allegations are nothing more than a string of conclusory statements unsupported by specific facts. On this basis alone, the Complaint fails to properly plead a conspiracy, and the Court should dismiss the cause of action. *See Sieverding, supra,* at *17-*18 (dismissing the plaintiffs' civil conspiracy claim for failure to "allege against any defendant facts or circumstances in other than conclusory fashion.").

Second, Plaintiff fails to allege an actionable civil wrong or tort that can serve as the basis for the conspiracy, as required. The gist of a conspiracy is the civil wrong perpetrated. Plaintiff's entire conspiracy is premised on the conclusion that bugging and recording his private conversations was wrongful. (Compl. ¶ 145.) As set forth above, Plaintiff has failed to state a claim under the Federal Wiretapping Statute. Since Plaintiff fails to state a cause of action for any viable underlying tort or civil wrong, the conspiracy claim necessarily fails to state a claim and dismissal is warranted for this additional reason.

### 3. Plaintiff Fails to State a Claim for Tortious Interference With Economic Relations (Count VI).

In his sixth cause of action, Plaintiff purports to allege a claim for tortious interference with economic relations against Hitchcock. Hitchcock, a director (titled "Trustee") of the ProRodeo HOF, voted to terminate Plaintiff's employment. (Compl. ¶¶ 127-28.) Although styled as interference with economic relations, the Complaint relies entirely on a purported "agreement" Plaintiff had with the ProRodeo HOF and the fact that Hitchcock allegedly

13

"induced the HOF to breach the agreement and to terminate Plaintiff's employment." (Compl. ¶¶ 155-160.) As such, the claim, though inartfully pled, appears more properly to be intentional interference with contract. In Colorado, the tort of intentional interference may only be brought against one "who *intentionally* and *improperly* interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Westfield Dev. Co. v. Rifle Inv. Ass'n*, 786 P.2d 111, 1117 (Colo. 1990) (quoting Restatement (Second) of Torts § 766 (1979)); *Trimble v. City and County of Denver*, 697 P.2d 716, 725-26 (Colo. 1985); *American Express Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1241 (D. Colo. 1999); *Mares v. ConAgra Poultry Co., Inc.*, 773 F. Supp. 248, 254 (D. Colo. 1991), *aff'd on other grounds* 971 F.2d 492 (10th Cir. 1992). There are three material deficiencies in Plaintiff's claim.

First, Plaintiff fails to state a claim for interference as a matter of law because he has failed to properly allege that he had any enforceable agreement with ProRodeo HOF. The interference claim relies on a supposed August 14, 2006 letter from the ProRodeo HOF special committee to Plaintiff. (Compl. ¶¶ 116-119.) As with the July 5 Performance Plan, Plaintiff's vague allegations and characterizations of the August 14 letter show, at best, that it was yet another performance improvement plan identifying specific duties the committee required Plaintiff to perform in order to correct his performance. Just as the July 5 Performance Plan is not a contract as a matter of law, so, too, the August 14 letter falls short. If the ProRodeo HOF letter is not an enforceable agreement, there can be no improper interference with it.

Second, even assuming that Plaintiff can allege an enforceable agreement with ProRodeo HOF, his claim of interference fails as a matter of law because he has not alleged facts sufficient to demonstrate that Hitchcock's interference was improper or otherwise unlawful. Plaintiff did not and cannot allege that Hitchcock engaged in improper conduct because a director's and trustee's exercise of discretion within the scope of his duties and responsibilities is justified—and privileged—as a matter of law. *See Donohue v. Unipac Serv. Corp.*, 847 F. Supp. 1530,

1534 (D. Colo. 1994); *Meehan v. Amax Oil & Gas, Inc.*, 796 F. Supp. 461, 465-66 (D. Colo. 1992); *Bithell v. Western Care Corp.*, 762 P.2d 708, 713 (Colo. Ct. App. 1988); *Zappa v. Seiver*, 706 P.2d 440, 442 (Colo. Ct. App. 1985). As recently confirmed in *Powell Products, Inc. v. Marks*:

> [O]fficers of a corporation acting in their official capacity generally cannot be liable for inducing the corporation to breach a contract. Otherwise, every time a corporation was sued for breach of contract, each of its officers who participated in the decision to breach would also be liable for intentional interference with contractual relations, which would be nonsensical.

948 F. Supp. 1469, 1477-78 (D. Colo. 1996) (internal citations omitted). It is only "[i]n rare circumstances, [that] a corporate officer can be liable for inducing the corporation to breach a contract a contract with a third party." *Id.* at 1478. To overcome this immunity doctrine, a plaintiff must demonstrates that the officer's motives are improper and his conduct entirely outside the scope of his employment. *See Cronk v. Intermountain Rural Electric Ass'n*, 765 P.2d 619, 623 (Colo. Ct. App. 1988), *cert. denied* (Nov. 28, 1988). *Cf. Electrolux Corp. v. Lawson*, 654 P.2d 340, 341-42 (Colo. Ct. App. 1982) (held interference with employment-at-will contract not improper unless wrongful means, such as physical violence, fraud, civil suit, or criminal prosecution, used), *overruled on other grounds by Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 494 (Colo. 1989).

This "analysis focuses on whether the agent acted, in part at least, to serve the corporation's interest." *W.O. Brisben Cos., Inc. v. Krystkowiak*, 66 P.3d 133, 136 (Colo. Ct. App. 2002). In *Krystkowiak*, for instance, the defendant was the Chairman of the Colorado Springs Neighborhood Association (NECSNA). *See id.* at 134. NECSNA was formed to oppose the construction of an apartment complex proposed by plaintiff Brisben. In his capacity as Chairman of NECSNA, Krystkowiak attended a mediation with representatives from Brisben but refused to sign a settlement agreement, even when NECSNA's president did so. Brisben subsequently sued Krystkowiak for intentional interference with the settlement agreement. Reasoning that the complaint failed to allege that Krystkowiak "was motivated *solely* by a desire to harm" one of the contracting parties, the lower court dismissed the complaint and the appellate

court affirmed. *Id.* at 137 (emphasis in original). The appellate court further stated that Brisben's argument that Krystkowiak had a direct, personal pecuniary motivation in opposing the development was not sufficient to support a claim of intentional interference because the plaintiff also had to demonstrate that the agent's actions were intended "solely" to harm either party or interfere with their contracts and was not, in any way, to further the business of the agent's principal. *Id.* (quoting *King v. Driscoll*, 638 N.E.2d 488, 495 (Mass. 1994) ("The motivation of personal gain . . . generally is not enough to satisfy the improper interference requirement.")).

Here, Plaintiff's blanket claim of interference by Hitchcock, a director and trustee of the ProRodeo HOF, is completely devoid of any allegations demonstrating how that purported interference was in any manner improper. Hitchcock, who Plaintiff concedes challenged "McCormack regarding the HOF's monetary losses," (Compl. ¶ 115), was well within his discretion as a director and trustee to give the advice to terminate Plaintiff. At a minimum, Plaintiff's concession that Hitchcock was concerned with Plaintiff's ability to fiscally manage the ProRodeo HOF demonstrates that Hitchcock was motivated at least in part to protect the corporation.[3] In fact, advising the ProRodeo HOF whether to terminate McCormack for his myriad of financial failures was not only within the scope of Hitchcock's agency, it is one of the very core purposes of his agency. As such, any such conduct purportedly inducing breach was

---

[3] Plaintiff's claim is not saved by his wholly conclusory allegation that Hitchcock acted "maliciously, willfully and wantonly, and in reckless disregard of McCormack's rights, solely for his own personal interests, and without any intent to serve any legitimate purposes of the HOF." (Compl. ¶ 130.) "Bare bones" and conclusory allegations without any supporting facts are insufficient to properly state a claim. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). *See also Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1968-69 (May 21, 2007) (the pleading standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Hall v. Bellmon*, 935 F.2d 1106, 1113-14 (10th Cir. 1991) (conclusory allegations of malicious intent insufficient to state civil rights claim for loss of property). Under *Tal, Twombly,* and *Hall* absent a *showing* in the complaint that Hitchcock unlawfully interfered with Plaintiff's agreement with the ProRodeo HOF for personal retribution, his claim for interference must fail. This is especially so where the Complaint itself avers that Hitchcock "aggressively attacked McCormack regarding the HOF's monetary losses." (Compl. ¶ 115.) This concession not only directly contradicts Plaintiff's conclusory allegations of personal retribution, it also shows that Hitchcock's ultimate purpose was to protect the interests of the ProRodeo HOF.

16

not improper and Plaintiff's claim fails as a matter of law. Plaintiff has simply failed to plead sufficient facts to demonstrate otherwise.

Third, Colorado has enacted statutory protection for volunteer directors of nonprofit corporations, such as Hitchcock, which -render him immune to the claims alleged here. Colorado's Volunteer Service Act confers immunity on any director of a nonprofit corporation for acts or omissions made in the performance of their duties, except when their conduct is willful and wanton. *See* C.R.S. § 13-21-116(2)(b)(I). Hitchcock is a volunteer director and trustee, and the ProRodeo HOF is a 501-C-3 nonprofit corporation pursuant to section 501 of the federal Internal Revenue Code. (*See* Corporate Disclosure Statement.) As noted above, Hitchcock's recommendation to terminate McCormack was well within the performance of his duty as a director and trustee. McCormack's summary and conclusory allegation that Hitchcock acted "willfully or wantonly" is insufficient to bring him outside the protections afforded by statute.

### 4. Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VII).

Plaintiff alleges in his seventh cause of action that ProRodeo HOF breached the implied covenant of good faith and fair dealing through various unidentified "acts and omissions." (Compl. ¶ 162.) As an initial matter, since the Complaint provides no underlying factual basis nor sets forth how ProRodeo HOF purportedly breached the implied duty, Plaintiff has not properly stated a cause of action for a breach of the implied covenant. Presumably, however, this count is based on his termination and is, in essence, a general re-statement of the breach of contract claim. As there is no such cognizable claim in Colorado in the employment context, the count should be dismissed.

Colorado does not recognize an implied covenant of good faith and fair dealing in employment contracts. In *Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1387 (Colo. Ct. App. 1986), for example, the court expressly declined to accept the plaintiff's invitation to extend the implied covenant of good faith and fair dealing, found in some commercial contracts, to

employment contracts. Since *Pittman,* many courts have reaffirmed that view. *See, e.g., Redies v. Nationwide Mut. Ins. Co.,* 711 F. Supp. 570 (D. Colo. 1989) (dismissing breach of contract and wrongful termination claims based on implied covenant of good faith and fair dealing); *Farmer v. Central Bancorporation, Inc.,* 761 P.2d 220 (Colo. Ct. App. 1988) ("An implied covenant of good faith and fair dealing found in some commercial contracts does not extent to at-will employment contracts"); *Glotson v. ITT Federal Servs. Intern. Corp.,* 2007 WL 1830486, at *2 (D. Colo. Jun. 21, 2007) (recognizing that "several Colorado appellate courts and federal courts applying Colorado law have held that there is no cause of action under Colorado law for breach of the implied covenant of good faith and fair dealing in the employment context"); *Donohue v. Unipac Serv. Corp.,* 847 F. Supp. 1530, 1535 (D. Colo. 1994) (same); *Decker v. Browning-Ferris Industries of Colorado, Inc.,* 931 P.2d 436, 445 (Colo. 1997) (observing that Colorado appellate courts decline to recognize an implied covenant of good faith and fair dealing in an at-will employment contract and further ruling that there can be no tort claim for breach of an *express* covenant of good faith and fair dealing).

Artful pleading will not save the cause of action. In *Donohue,* the plaintiff attempted to distinguish these holdings by arguing that the breach concerned not his termination but his "inability to perform according to [the company's] representations despite its statements that it would adhere to the provisions of the [employee manual]." 847 F. Supp. at 1535. Plaintiff, too, may attempt to distinguish these cases by basing his claim not on his termination but on ProRodeo HOF's failure to "deal with him fairly" under the provisions of the July 5 Performance Plan. Plaintiff's allegations, as with the plaintiff in *Donohue,* are "simply an attempt, through not-so-artful pleading, to avoid the bar of *Pittman,*" and should be dismissed. *Id.*

As there are no factual allegations supporting the existence of a duty of good faith and fair dealing in the employment context, the seventh cause of action should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

18

DEN 96288852v6 9/4/2007

WHEREFORE, Defendants respectfully request that the Court enter an Order (1) dismissing the Complaint in its entirety, and (2) awarding any further relief that the Court deems just and proper.

Dated this 4th day of September, 2007.

Respectfully submitted,

/s/
Jenny Brook, Attorney Reg. #:  29144
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:    303.572.6500
Fax:   303.572.6540
Email: BrookJ@gtlaw.com

**Attorneys for Defendants** ProRodeo Hall of Fame and Museum of the American Cowboy, Inc., Professional Rodeo Cowboy's Association, Inc., Tanna Kimble, and Ryer Hitchcock

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 4, 2007, a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

> Larry W. McCormack
> Plaintiff in Propria Persona
> 6387 Mesedge Drive
> Colorado Springs, CO 80919
> P_Eye57@hotmail.com

        /s/
Debra Sikes
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:    303.572.6500
Fax:    303.572.6540
Email: SikesD@gtlaw.com