IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01228- LTB-KLM

LARRY W. MCCORMACK

Plaintiff,

v.

PRORODEO HALL OF FAME AND MUSEUM OF THE AMERICAN COWBOY, INC.,
PROFESSIONAL RODEO COWBOYS ASSOCIATION, INC.,
TROY L. ELLERMAN,
TANNA KIMBLE,
CARA TURNER,
RYER HITCHCOCK,
PROFILE EMPLOYEE ASSISTANT PROGRAM,
STEVE TUCKER, PhD., AND
DOES 1 THROUGH V, INCLUSIVELY,

Defendants.

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendants ProRodeo Hall of Fame and Museum of the American Cowboy, Inc., Professional Rodeo Cowboy's Association, Inc., Tanna Kimble, Cara Turner, and Ryer Hitchcock, hereby submit their Reply Memorandum In Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

### I.    INTRODUCTION

Plaintiff Larry McCormack's Response in Opposition to Defendants' Motion to Dismiss ("Response") highlights the fatal deficiencies in his own complaint. Nothing contained within Plaintiff's Response cures the flaws in his sole federal claim for alleged violations of the Federal Wiretapping Statute in that he has failed to plead sufficient facts to demonstrate that his private

1

communications were *unlawfully* intercepted as required to state a claim under the statute. Because Plaintiff can state no federal claim against Defendant, his complaint should be dismissed with prejudice. Moreover, as demonstrated in Defendants' Motion and below, Plaintiff's state-law claims are equally specious and should be dismissed.

## II.   ARGUMENT

### A.   Plaintiff Does Not State A Claim For Federal Wiretapping Because Plaintiff Fails to Plead An Unlawful Interception or Justifiable Expectation of Privacy.

Plaintiff's Response implicitly concedes that his entire argument for violations of the Federal Wiretapping Statute rises or falls on the issue of whether an unaugmented tape recorder can constitute the "intercepting" mechanism under the circumstances alleged here. Most of Plaintiff's Response does not even address the issue of *unlawful* interception, but instead goes on for page after page detailing the history of the 1986 *electronic* communications amendment to the Statute. (Resp. at 11-14.) Yet, Plaintiff has neither alleged nor otherwise claims any interception of *electronic communications,* or e-mail. His complaint is limited to interception of "conversations." (Compl. ¶ 86-94.) Similarly, Plaintiff asserts that the "tremendous scientific and technological developments in surveillance techniques" existing as of 1968 when Congress enacted the Statute have "been far surpassed by the developments of 2006." (Resp. at 12-13.) The recitation of this purported history does nothing to cure the underlying defect in his complaint - that insufficient facts are plead from which it can be determined that an unlawful interception occurred. While, as Plaintiff avers, surveillance technology may well have "progressed exponentially" in the last two decades, the "progression" only further underscores the need to plead sufficient facts to demonstrate that the interception as alleged violated the provisions of the statute.

Not all "interceptions" are unlawful. It is well established, for example, that use of hand-held recorder and similar types of "antiquated equipment" in and of itself is not regulated under the Federal Wiretapping Statute. Defendants identified and discussed *United States v. Carroll*,

332 F. Supp. 1299, 1301 (D.C. Dist. 1971), holding that the Statute did not apply where a conversation is overheard unaided and recorded with no contrivance and no augmentation. *Id.* In other words, the court made clear that, even if an interception occurs, it is not every communication that will be protected under the Wiretapping Statute. Application of the reasoning in *Carroll* to the Rule 12 context demonstrates that facts sufficient to establish that the interception as alleged was *unlawful* within the meaning of the Act is essential.

Although Plaintiff attempts to circumvent this holding by arguing that *Carroll* is itself antiquated, (Resp. at 14), several courts over the last three decades confirm the continued viability and applicability of this case. *See, e.g., United States v. Bast*, 3438 F. Supp. 1202, 1203 (D.D.C. 1972) (observing the statutory scheme requires "surreptitious" recording, which exists where the "recorder contrives to overhear [the conversation] by, for example, using a device to amplify sound above normal tones"); *Blackmon v. State*, 449 So.2d 1264 (Ala. Cr. App. 1984) (citing with approval the elements of an unlawful interception identified in *Carroll*); *PBA Local No. 38 v. Woodbridge Police Dept.*, 134 F.R.D. 96, 105 n.20 (D.N.J. 1991) (recognizing that "oral communications as defined in 18 USC 2510(2) are analyzed under *Katz* framework; no liability for interception of private telephone conversation from behind closed door of adjoining room in hotel."); *People v. Lesslei*, 939 P.2d 443, 448 (Colo. App. 1996) (citing with approval *Carroll* for the proposition that "purely objective determination that there was no reasonable expectation is only possible when conversation is overheard unaided and recorded with no contrivance and no augmentation.").

Several additional opinions confirm that merely acquiring communications via a recorder does not constitute an "interception." In *United States v. Harpel*, 493 F.2d 346, 348 (10th Cir. 1974), for instance, a defendant was convicted of disclosing an unlawfully intercepted communication in violation of the Statute where he used an extension telephone to overhear the conversation and simultaneously recorded it by means of a tape recorder. On appeal, the Tenth Circuit had to decide what constituted the "interception." Reasoning that "the recording of a conversation is immaterial when the overhearing is itself legal," the court held that the recorder

3

could not constitute the intercepting mechanism. *Id.* at 350. The court went on to observe that it could find no indication that Congress intended to prevent persons from preserving the contents of a communication they could lawfully overhear. *See id.*

More recently still, the Fourth Circuit Court of Appeals upheld quashing indictments for violations of a Louisiana statute modeled directly after the federal Statute because the defendant heard and tape-recorded conversations "with his unaided ear and used no enhancing device." *State v. Smith*, 848 So.2d 650, 654-55 (4th Cir. 2003). In that case, the defendant, a private investigator, went to a jail to interview a witness in a murder case. *See id.* at 652. While standing in the hall outside a closed door to the interview room, he heard the district attorney interviewing the same witness about the same murder and taped the conversation. *See id.* Citing extensively to *Carroll*, the court observed that, "[u]ndoubtedly, there was a subjective expectation of privacy when [the district attorney] interviewed [the witness]." *Id.* at 654. The court concluded, however, that this expectation was not justifiable under the circumstances since defendant's "recorder being where he could lawfully be and hear cannot be said to have been placed there 'in order to pick up what could not be heard easily by an uncontriving hearer.'" *Id.* (quoting *Carroll*, 337 F. Supp. at 1263). *See also John Doe Trader Number One*, 722 F. Supp. 419, 421-22 (N.D. Ill. 1989) (permitting government to use evidence recorded by an undercover agent posing as a commodities trader who had secreted microphones under his trading jacket because "recording equipment utilized by the agent 'was incapable of capturing sounds not otherwise audible to the agent'"), *aff'd at* 894 F.2d 240, 243 (7th Cir. 1990); *United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999) (noting that the "legislative history concerning Section 2510(2) is simply that an individual has a legitimate expectation that he will not be intercepted by a listening device if he has a reasonable expectation that he will not be overheard by the naked ear"); *United States v. Santillo*, 507 F.2d 629, 634 (3d Cir. 1975) ("the mechanical ear of the recorder is no different from the ear of a listener with precise memory").

The facts as pled are insufficient to demonstrate that any form of unlawful interception occurred. To escape this inevitable conclusion, Plaintiff now presents new facts not alleged in

his complaint. Namely, Plaintiff now argues that the recorders used in cases like *Carroll* "are dwarfed by the tiny device that was secreted in Plaintiff's office." (Resp. at 14.) As an initial matter the size of the recorder is irrelevant. The question is whether the tape recorder "is used to record a conversation which [someone] is unable to overhear with his naked ear." *John Doe*, 722 F. Supp. at 422. In the hopes of elevating his facts to meet this standard, Plaintiff--for the first time ever--also asserts that the recorder was "secreted in Plaintiff's office." (Resp. at 14.) The complaint, however, is devoid of any such allegation and provides no factual basis for arguing that the recorder was hidden inside his office. Instead, Plaintiff merely alleges, on information and belief, that Defendants Kimble or Turner used his own "digital recorder to secretly record his conversations." (Compl. ¶ 93.) These facts, standing alone, are insufficient to state a claim under the Wiretapping Act and Plaintiff may not, through briefing, now re-write his complaint to plead around the limitations of the statute. As a matter of law, his pleading is deficient and should be dismissed.

    **B.**    **Plaintiff Agrees That Dismissal of Count I Divests This Court of Subject Matter Jurisdiction.**

Plaintiff's Response concedes that, should this Court dismiss the Federal Wiretapping Statute claim, it may--and should--divest itself of supplemental jurisdiction over the remaining state-law claims. (Resp. at 20.) If that single federal claim is dismissed, Defendants respectfully suggest that considerations of judicial economy, convenience and comity warrant deferring these matters to state court and disposing of Plaintiff's state-law claims. *See, e.g.*, 28 U.S.C. § 1367(c)(3); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

    **C.**    **Several of Plaintiff's State-Law Claims Are Improper and Insufficiently Pled.**

In their Motion to Dismiss, Defendants demonstrated that the Complaint did not allege facts which, if true, would support several of his state-law claims. Plaintiff's Response still does not articulate a cause of action for breach of contract, civil conspiracy, intentional interference

with economic relations, and breach of the implied covenant of good faith and fair dealing and those claims should accordingly be dismissed.

### 1. Performance Plans Cannot Be the Basis for a Breach of Contract Claim.

Plaintiff's attempt to save his contract claim by resorting to the July 5, 2006 "Ellerman letter," fails because the letter presents precisely the type of "vague assurances" that Colorado courts have uniformly held do *not* create an enforceable contract for a specific duration. *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465 (10th Cir. 1994) ("vague assurances" must contain "detailed lay-off guidelines or other guarantees of employment"); *Hoyt v. Target Stores, Civ. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. Ct. App. 1998) (employer's promise must be "sufficiently definite"). As a threshold matter, Plaintiff does not even attempt to dispute the black-letter principle that the employment relationship is presumed to be at-will.[1] (Resp. at 21.) In fact, his own quoted authorities further make clear that "absence of special consideration of an express stipulation as to the duration of employment, a contract for permanent employment is no more than an indefinite general hiring terminable at the will of either party." (*Id.* at 25 (quoting *Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo. Ct. App. 1986).)

Plaintiff attempts to rescue his breach of contract claim by arguing that statements in the July 5, 2006 letter contemplated permanent employment or, at a minimum, employment through January 7, 2007. (Resp. at 23.) However, the letter itself, as alleged by Plaintiff in paragraph 102 of his complaint, nowhere sets forth an express definite length of employment. At best, the letter provides for an ambiguous reference to a "management review of [Plaintiff's] performance" in January of 2007. Setting a performance plan review procedure is a far cry from setting a definite employment term. Neither has Plaintiff anywhere alleged special consideration. *See, e.g., Pittman*, 724 P.2d at 1383 (stating that "[s]pecial consideration

---

[1] Although Plaintiff makes much of the word "presumed," and argues "that this is a rebuttable presumption," Colorado courts make clear that the at-will doctrine is substantive rule, not merely an evidentiary presumption. *See Schur v. Storage Tech. Corp.*, 878 P.2d 51 (Colo. Ct. App. 1994).

6

includes, among other circumstances, the acceptance by the employee of lower pay, and the employer's acquisition of the expertise and customer contacts of an experienced salesman"). Certainly, the rendering of services to the Hall of Fame is not itself considered to be special consideration. See *Schur*, 878 P.2d at 55. For these reasons, and the reasons detailed in the original Motion, dismissal is proper.

### 2. Plaintiff Has Not Pled Conspiracy With Particularly.

Plaintiff's conspiracy claim against Kimble, Turner, and Ellerman (and, as the Response indicates on page 33, "possibly as yet unidentified parties") must be dismissed because Plaintiff has not pled – and cannot plead – a legally cognizable underlying cause of action for violations of the Federal Wiretapping Statute.

Moreover, Plaintiff has not properly pled his conspiracy claim. Plaintiff attempts to circumvent controlling Colorado precedent by mischaracterizing the holding in *Sieverding v. Colorado Bar Ass'n*, 2003 WL 22400218 (D. Colo. 2003). He incorrectly asserts that the court in *Sieverding* held the conspiracy claim "conclusory" only because plaintiffs included "far too many facts in a disorganized complaint ...." (Resp. at 32.) In *Sieverding*, the district court held that the plaintiffs there "failed to allege any specific facts that fulfill the requirements of the elements" of a conspiracy." *Id.* at *18. Specifically, the court cautioned that "[i]n order to successfully plead a civil conspiracy, plaintiff must allege facts that show that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose." *Id.*

In other words, as *Sieverding* makes clear, plaintiffs must plead a conspiracy with particularity. The Colorado Supreme Court further mandated in *Nelson v. Elway*, 908 P.2d 102 (Colo. 1995), that courts "will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff." In so holding, the Court cited to its earlier opinion in *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977). There, plaintiffs alleged a conspiracy to commit trespass and based the requisite meeting of the minds on "**knowledge on the part of [one co-conspirator] that [the other] would use or was using his survey to construct an illegal fence.**" *Id.* at 440. The Court rejected this supposition, reasoning that "[p]laintiffs would,

thus, imply an agreement and conspiracy from ... silence." "[S]ilent knowledge of an unlawful act," held the Court, "is insufficient to establish the requisite agreement." *Id.*

Here, the only supposed fact Plaintiff relies upon to support his allegations of an agreement is a dubious reading of Paragraph 81 of his complaint, leading him to conclude that Defendant Kimble had "**knowledge of** tape recorder being given to Ellerman by Turner after obtaining private information." (Resp. at 33) Paragraph 81 merely reflects that "Kimble told McCormack that she could not get the recorder back from Turner, as Turner had given it to Ellerman," and that if he wanted to know "why Ellerman would have the recorder ... he would have to talk to Ellerman about it." (Compl. ¶ 81.) This in no way indicates that Kimble knew the recorder was given to Ellerman "after obtaining private information." Even if such conjecture and self-serving interpretations were plausible, the Colorado Supreme Court's rulings in *More* and *Nelson* teaches us that silent **knowledge of** a purported unlawful act is not enough for a meeting of the minds.

As it stands, Plaintiff's complaint is devoid of any factual allegations regarding the role of the individual "conspirators" or their purported agreement to conspire. Indeed, Plaintiff admits his pleading is deficient in this regard since he "was not privy" to any actual facts regarding any purported illegal agreement. (Resp. at 33.) He further admits that he "intends to gain these facts through discovery." (*Id.*) By his own argument, then, Plaintiff admits his complaint lacks particularity and merely serves as a spring board into an improper discovery fishing expedition where he hopes that he will find some merit for his speculative "information and belief" allegations. The Court should not allow Plaintiff to pursue a claim based upon an imagined conspiracy theory as he has not alleged--and admits he cannot allege--the necessary facts to support such a claim.

      **3.**    **Plaintiff's Fails to Set Forth Facts To Overcome Director/Trustee Immunity from Tortious Interference.**

Plaintiff is correct in asserting that a director's motivation for tortiously "inducing the breach is *generally* a question of fact for the jury." (Resp. at 37.) In order to raise to the level

warranting jury review, however, he must put forth some factual support for his allegation that Defendant and Trustee Ryer Hitchcock was "motivated *solely* by his desire to harm" Plaintiff. *W.O. Brisben Cos., Inc. v. Krystkowiak*, 66 P.3d 133, 136 (Colo. Ct. App. 2002) (emphasis in original) (discussed in detail within Defendants' Motion at 15 because court there held that in order to overcome the immunity doctrine a complaint must provide facts that defendant is motivated "solely" by a desire to harm one of the contracting parties). Plaintiff did not present such facts in his complaint. His Response, at best, argues that Hitchcock "took steps to terminate Plaintiff's employment" after receiving Plaintiff's letter that the special committee was formed in violation of the Hall of Fame's bylaws. (Resp. at 35.) This, however, does not come close to the requisite showing that Hitchcock's *sole motivation* was to harm Plaintiff and, as shown in the original Motion, it could not since Plaintiff expressly indicated in his complaint that Hitchcock was motivated, at least in part, by Plaintiff's responsibility for "the HOF's monetary losses." (Compl. ¶ 115) (Mot. at 16.) Conclusory allegations to the contrary are both undermined by this admission and insufficient to bring this case beyond the protections afforded directors and trustees under Colorado common law and statutory immunity. *See Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1968-69 (May 21, 2007) (the pleading standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) ("[b]are bones" conclusory allegations without any supporting facts insufficient to properly state a claim).

    4.    **The *Pittman* Line of Cases Are Controlling and Require Dismissal of Plaintiff's Claim for Breach of an Implied Covenant of Good Faith and Fair Dealing.**

Defendants established in their opening brief that, under controlling Colorado law, Plaintiff may not allege a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context. *See Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1387 (Colo. Ct. App. 1986) (refusing to extend implied covenant of good faith and fair dealing to employment contract); *Redies v. Nationwide Mut. Ins. Co.*, 711 F. Supp. 570 (D. Colo.

9

1989) (same); *Glotson v. ITT Federal Servs. Intern. Corp.*, 2007 WL 1830486, at *2 (D. Colo. Jun. 21, 2007) (same). Plaintiff's attempt to distinguish these cases is misguided. Plaintiff argues that the cases are distinguishable because they "all refer to 'at-will' employment contracts and contexts." (Resp. at 28.) Yet, in his Response, Plaintiff explicitly points out that the employee's oral contract in *Pittman* may have been for "permanent employment." (Resp. at 26.) Indeed, the *Pittman* court did recognize that the question of terminability at will would have to be examined by the jury. See 724 P.2d at 1383-84. Regardless of whether the contract was at-will or permanent, however, the court emphatically rejected "the inclusion of such a covenant [of good faith and fair dealing] in employment contracts." *Id.* at 1385. On its face, the holding was not limited to at-will contracts. The Colorado Supreme Court has since confirmed that a contract to act in good faith arises only by *express terms* in an employment contract and declined to rule on the implied good faith ruling in *Pittman*. *See Decker v. Browning-Ferris Indus. of Colo., Inc.*, 931 P.2d 436, 443 (Colo. 1997).

Plaintiff offers no legal authority holding otherwise. Indeed, most of his cases cited do not even address the issue as the plaintiffs in those cases did not raise and the court thus did not consider a claim for breach of the implied covenant of good faith and fair dealing. *See, e.g., Brooks v. Trans World Airlines, Inc.*, 574 F. Supp. 805 (D. Colo. 1983) (employee alleged claims for age discrimination, breach of contract and fraud); *Salimi v. Farmers Ins. Group*, 684 P.2d 264 (Colo. Ct. App. 1984) (employee alleged claims for breach of contract and extreme and outrageous conduct); *Continental Air Lines, Inc.*, 731 P.2d 708 (Colo. 1987) (employee alleged claim for wrongful discharge). Several other cases cited by Plaintiff do not concern the employment context at all. *See, e.g., Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo. 1995) (supply contract); *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359 (Colo. Ct. App. 1994) (lender/borrower contract); *Friedman v. Colorado Nat'l Bank*, 825 P.2d 1033 (Colo. Ct. App. 1991) (partnership contract); *Larese v. Creamland Dairies, Inc.*, 767 F.2d 716 (10th Cir. 1985) (franchise contract); *Ruff v. Yuman County Transp. Co.*, 690 P.2d 1296 (Colo. Ct. App 1984) (sales contract). The single remaining employment case, *Price v. Federal Express Corp.*,

is inapposite as, there, the court explicitly found both special considerations and express representations of good faith and fair dealing. *See* 660 F. Supp. 1388, 1392-93 (D. Colo. 1987).

As there is no recognized claim for the breach of an implied covenant of good faith and fair dealing in the employment context, the seventh cause of action is properly dismissed as a matter of law.

## II.   CONCLUSION

For these reasons, and the reasons set forth in Defendants' opening memorandum of law and briefing, Defendants respectfully request the Court to dismiss the Complaint with prejudice in its entirety

Dated this 15th day of October, 2007.

Respectfully submitted,

*s/ Jeannette M. Brook*
Jeannette M. Brook, Attorney Reg. #:  29144
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202
Tel:    303.572.6500
Fax:   303.572.6540
Email: BrookJ@gtlaw.com

**Attorneys for Defendants** ProRodeo Hall of Fame and Museum of the American Cowboy, Inc., Professional Rodeo Cowboy's Association, Inc., Tanna Kimble, Cara Turner, and Ryer Hitchcock

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2007, a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

> Larry W. McCormack
> Plaintiff in Propria Persona
> 6387 Mesedge Drive
> Colorado Springs, CO 80919
> P_Eye57@hotmail.com

_s/ Ginger Lowry_
Ginger Lowry
